1   Edward R. Nelson, III (admitted *pro hac vice*)
    FRIEDMAN, SUDER & COOKE
2   Tindall Square Warehouse No. 1
    604 East 4th Street, Suite 200
3   Fort Worth, Texas 76102
    Telephone: 817-574-7033
4   Facsimile: 817-334-0401
    nelson@fsclaw.com
5
    Dan E. Chambers (SBN 156853)
6   Ako S. Williams (SBN 212451)
    RUTAN & TUCKER, LLP
7   611 Anton Boulevard, Fourteenth Floor
    Costa Mesa, California 92626-1931
8   Telephone: 714-641-5100
    Facsimile: 714-546-9035
9   dchambers@rutan.com
    awilliams@rutan.com
10
    Attorneys for Defendants
11  ACACIA RESEARCH CORPORATION
    and SCREENTONE SYSTEMS CORPORATION
12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                  SOUTHERN DIVISION

| | |
|---|---|
| 16   ELECTRONICS FOR IMAGING, INC., a Delaware corporation, | CASE NO.  SACV07-1333 CJC (ANx) |
| 17                      Plaintiff, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER CASE** |
| 18   vs. | |
| 19   ACACIA RESEARCH CORP., a | |
| 20   Delaware corporation; and SCREENTONE SYSTEMS CORP., a | [First-to-File Rule / 28 U.S.C. § 1404(a)] |
| 21   Delaware corporation, | |
| 22                      Defendants. | Date:        February 25, 2008 |
| 23   | Time:       1:30 p.m. <br> Place:      Courtroom 9B |

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     Nature and Stage of the Proceedings ................................................. 1

II.    Summary of the Argument ............................................................... 1

III.   Statement of Facts ........................................................................... 2

IV.   The Current Status of the Texas Action and Other Related
Declaratory Judgment Suits .............................................................. 3

V.    Argument ......................................................................................... 4

     A.    The First-to-File Rule Promotes Judicial Economy and
Avoids Duplicative Litigation ................................................. 4

          1.    The Texas action was filed before the present suit ................... 6

          2.    The parties in this action are substantially similar to
the parties involved in the pending Texas action. ..................... 7

          3.    The issues in this action are nearly identical to the
issues involved in the pending Texas action. ............................ 8

          4.    A Factually Relevant, Persuasive Case Favors
Transfer to Texas. ........................................................................ 9

     B.    This Action Should Be Transferred Under 28 U.S.C.
1404(a) to Prevent Unnecessary Duplication of Efforts and
Resources. ............................................................................... 9

          1.    Threshold venue elements for § 1404(a) transfer are
met. ............................................................................................. 10

          2.    Plaintiff's choice of forum is to be afforded less
deference based on the facts surrounding the filing
of EFI's declaratory judgment action. ..................................... 11

          3.    Convenience of the non-party witnesses favors
transfer since it will avoid duplicative testimony. .................... 12

          4.    Relevant evidence and proof is centrally located in
Texas. ......................................................................................... 13

          5.    The interests of justice will be served by
consolidating this action into the existing Texas
Action. ........................................................................................ 13

          6.    The parties' contacts with the forum. ....................................... 14

          7.    Familiarity with applicable law. ............................................... 14

1

**Page**

2          8.      Compulsory process.................................................................. 14

3    VI.    Conclusion .................................................................................................... 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*A.J. Industries, Inc. v. United States Dist. Ct.*,
5
   503 F.2d 384 (9th Cir. 1974) ........................................................................ 12, 13

6

*Alltrade Inc. v. Uniweld Products, Inc.*,
7
   946 F.2d 622 (9th Cir. 1991) ............................................................................. 6

8

*Apollo Enter. Solutions, LLC v. Debt Resolve, Inc.*,
9
   No. SA CV 07-106, 2007 U.S. Dist. LEXIS 42910 (C.D. Cal. April 10,
   2007) ........................................................................................................... 4

10

*Broadcast Data Retrieval Corp. v. Sirius Sat. Radio, Inc.*,
11
   No. CV 06-1190, 2006 U.S. Dist. LEXIS 37641 (C.D. Cal. June 6, 2006) ....... 10

12

*Brock v. Baskin-Robbins USA Co.*,
13
   113 F. Supp. 2d 1078 (E.D. Tex. 2000) ............................................................ 13

14

*Church of Scientology v. United States Dep't of the Army*,
15
   611 F.2d 738 (9th Cir. 1979) ............................................................................. 4

16

*Ciba-Geigy Corp. v. Minnesota Mining & Mfg. Co.*,
17
   439 F. Supp. 625 (D. R.I. 1977) .................................................................... 9, 13

18

*Com21, Inc. v. Hybrid Patents, Inc.*,
19
   357 B.R. 802 (Bankr. N.D. Cal. 2006) ............................................................... 5

20

*Coxcom, Inc. v. Hybrid Patents, Inc.*,
   No. C-06-7918, 2007 U.S. Dist. LEXIS 67168 (N.D. Cal. Aug. 30, 2007). 12, 13
21

22

*Crosley Corp. v. Hazeltine Corp.*,
   122 F.2d 925 (3d Cir. 1941) ............................................................................. 4
23

24

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ............................................................................ 11

25

*EEOC v. University of Pennsylvania*,
26
   850 F.2d 969 (3d Cir.), *cert. granted in part*, 488 U.S. 992 (1988) .................... 4

27

*Electronics for Imaging, Inc. v. Coyle*,
28
   394 F.3d 1341 (Fed. Cir. 2005) ........................................................................ 6

1

**Page(s)**

2
3
*Genentech v. Eli Lilly & Co.,*
  998 F.2d 931 (Fed. Cir. 1993) ............................................................................5

4
5
*Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness,*
  179 F.R.D. 264 (C.D. Cal. 1998)........................................................................11

6
*Inherent.com v. Martindale-Hubbell,*
  420 F. Supp. 2d 1093 (N.D. Cal. 2006)................................................................5

7
8
*Jones v. GNC Franchising, Inc.,*
  211 F.3d 495 (9th Cir. 2000) ...............................................................................9

9
10
*L. Cohen Group v. Luxurychair.com,*
  No. C 05-4476, 2006 U.S. Dist. LEXIS 2301 (N.D. Cal. Jan. 18, 2006).............5

11
12
*Lockheed Martin Corp. v. L-3 Comm. Corp.,*
  370 F. Supp. 2d 1349 (N.D. Ga. 2005)................................................................5

13
14
*Massachusetts Institute of Technology v. Abacus Software, Inc.,*
  No. 5:01-cv-00344 (E.D. Tex. Dec. 28, 2001).....................................................11

15
16
*Massachusetts Institute of Technology v. Gateway,*
  No. 5:01-cv-00343 (E.D. Tex. Dec. 28, 2001).....................................................11

17
18
*Mohamed v. Mazda Motor Corp.,*
  90 F. Supp. 2d 757 (E.D. Tex. 2000)..................................................................13

19
*Nordson Corp. v. Speedline Techs.,*
  No. C-00-2769, 2000 U.S. Dist. LEXIS 15240 (N.D. Cal. Oct. 6, 2000)..........11

20
21
*Pacesetter Systems, Inc. v. Medtronic, Inc.,*
  678 F.2d 93 (9th Cir. 1982) .............................................................................4, 6

22
23
*Panavision Int'l L.P. v. Toeppen,*
  141 F.3d 1316 (9th Cir. 1998) ...........................................................................13

24
25
*Save Power Ltd. v. Syntek Fin. Corp.,*
  121 F.3d 947 (5th Cir. 1997) ...............................................................................4

26
27
28

Rutan & Tucker, LLP
attorneys at law

1

Page(s)

2    **FEDERAL STATUTES**

3    28 U.S.C.
4        § 1400 ...................................................................................................... 10
         § 1404(a) ........................................................................................... Passim
5        § 1407 ...................................................................................................... 4

6

7    **NON-PERIODICAL PUBLICATIONS**

8
     *British Telecomm. plc v. McDonnell Douglas Corp.,*
9        No. C-93-0677 1993 U.S. Dist. LEXIS 6345, at *4
10       (N.D. Cal. May 3, 1993) .......................................................................... 5

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
attorneys at law

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Nature and Stage of the Proceedings

Electronics for Imaging, Inc. ("EFI") filed the above-captioned declaratory judgment action on November 13, 2007, seeking a declaration of non-infringement and invalidity of U.S. Patent Nos. 5,166,809 and 4,924,301. Defendants submitted an answer on December 18, 2007. Prior to filing any counterclaims, Defendants are filing this *Motion to Transfer or, in the Alternative, to Stay Pending Resolution of Issues by the Eastern District of Texas.*

### II.  Summary of the Argument

The declaratory judgment action brought before this Court by EFI is duplicative of a lawsuit filed by Screentone Systems Corporation ("Screentone") three months earlier in the United States District Court for the Eastern District of Texas (the "Texas Action"). Under the first-to-file rule, which turns on which court first obtains possession of the <u>subject</u> of the dispute, not the parties of the dispute, this case should be transferred, or in the alternative, stayed. Transferring or staying this case will further the principles of comity and sound judicial administration on which the first-to-file rule is based, by conserving judicial resources and by avoiding duplicative litigation and inconsistent results.

Defendants seek, alternatively, to transfer this action to the on-going litigation in the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a). Allowing the present declaratory judgment action to proceed in this district will cause a significant duplication of efforts, overlap in witnesses, and unnecessary waste of judicial resources. Defendants believe that transferring this action to the Eastern District of Texas is the most logical course of action and most efficient means of adjudicating the rights of all parties.

III.   **Statement of Facts**

On March 23, 2006, Acacia Technologies Group[1] ("Acacia Technologies") sent a letter to EFI stating that it believed that certain EFI products may be covered by U.S. Patent Nos. 4,924,301 ("the '301 patent") and/or 5,166,809 ("the '809 patent").[2]   EFI responded three months later stating that it was investigating the claims made in the letter.[3]   No further communications occurred for well over a year.

On August 8, 2007, Screentone (a Defendant herein) filed its original Complaint in the Marshall Division of the Eastern District of Texas alleging infringement of the '809 patent by seven companies (the "Texas Defendants").[4]   The Texas Defendants each make, sell, and distribute printer and other imaging products which operate to reproduce images by the claimed digital halftoning techniques. EFI asserts that at least three of the Texas Defendants are original equipment manufacturer (OEM) customers of EFI.[5]

After more than a year of silence, EFI contacted Acacia Technologies on October 16, 2007, and requested a meeting to explain why it believed EFI's products do not infringe the '809 patent.   Prior to the meeting, the parties executed a non-disclosure agreement which stated explicitly:

> The parties agree further that nothing disclosed, discussed, or exchanged in the course of their meeting(s) concerning the [Texas] Action shall be used as a basis for instituting a lawsuit or other legal proceeding seeking declaratory relief of any nature whatsoever.[6]

---

[1]   Acacia Technologies Group is a Division of Defendant Acacia Research Corporation.

[2]   Acacia Technologies Group is a Division of Defendant Acacia Research Corporation.

[3]   See Nelson Decl., Ex. 2 (Response letter from EFI to Acacia dated June 12, 2006).

[4]   See Nelson Decl., Ex. 3 (Screentone's original Complaint filed August 8, 2007, in the United States District Court for the Eastern District of Texas, Marshall Division).

[5]   See Nelson Decl., Ex. 4 (Letter from EFI dated October 16, 2007).

[6]   See Nelson Decl., Ex. 5 (Signed NDA between Screentone Systems Corp. and EFI dated November 11, 2007).

Rutan & Tucker, LLP
attorneys at law

1   The meeting went forward on November 12, 2007.[7]   The very next day, EFI filed
2   this lawsuit.

**IV.    The Current Status of the Texas Action and Other Related Declaratory Judgment Suits**

In the Texas Action, Screentone agreed to give each Texas Defendant a 30-day extension within which to answer.  On the last possible day (October 1, 2007), and in lieu of answers, the Texas Defendants filed three separate motions to dismiss, two of which alternatively requested transfer.  That same day, the Texas Defendants filed three nearly identical declaratory judgment actions — two in Delaware and one in Washington State — seeking declarations of non-infringement and invalidity regarding the same '809 patent at issue in the Texas Action and the action at bar.

The declaratory judgment actions and the Texas motions are erroneously premised on the assertion that Screentone lacked standing to sue when it did.  But the public record alone proves otherwise.[8]  Screentone acquired all right, title and interest in and to the '809 patent on June 18, 2007, and, as patent owner, Screentone indisputably maintained standing to bring the Texas Action — a fact that Screentone documented and detailed in papers presently before the Texas court.

The pending motions to transfer and/or dismiss in the Texas Action have been fully briefed and currently await ruling.  Moreover, Screentone has moved to transfer the Washington and Delaware actions to the Texas court.  These motions similarly await rulings.

It has become apparent recently that the filing of the declaratory judgment actions in Washington, Delaware and, now, California are little more than a conspiratorial ruse designed to create the appearance of "multi-district litigation."  On December 20, 2007, Screentone's counsel received word that six of the seven Texas Defendants filed a Motion to Transfer with the U.S. Judicial Panel on

---

[7]  See Nelson Decl., Ex. 6 (Letter from Screentone to EFI dates October 23, 2007); see also Nelson Decl. at 3.
[8]  See Nelson Decl., Ex. 7 (Assignment of '809 patent to Screentone).

Rutan & Tucker, LLP
attorneys at law

1   Multidistrict Litigation ("MDL Panel"), pursuant to 28 U.S.C. § 1407, in an action
2   styled *In re '809 Patent Litigation*.   The motion seeks to consolidate the Texas
3   Action with the Delaware, Washington, and California actions in the Western
4   District of Washington or, alternatively, in this Court.  Though EFI is not a movant
5   before the MDL Panel, no other conclusion can be drawn than EFI has colluded
6   with the Texas Defendants (and, particularly, its three Texas Defendant customers)
7   to *manufacture* multi-district litigation.  Such concerted gamesmanship should not
8   be rewarded, and this Court is asked to transfer EFI to Texas, the first-filed Court.

9   **V.**   **Argument**

10      **A.**   **The First-to-File Rule Promotes Judicial Economy and Avoids**
11           **Duplicative Litigation.**

12           "Where two actions involving overlapping issues and parties are pending in
13   two federal courts, 'there is a strong presumption across the federal circuits that
14   favors the forum of the first-filed suit under the first-filed rule.'"  *Apollo Enter.*
15   *Solutions, LLC v. Debt Resolve, Inc.*, No. SA CV 07-106, 2007 U.S. Dist. LEXIS
16   42910, at *3 (C.D. Cal. April 10, 2007).  The first-to-file rule was developed to
17   "serve[] the purpose of promoting efficiency well and should not be disregarded
18   lightly."  *Church of Scientology v. United States Dep't of the Army*, 611 F.2d 738,
19   750 (9th Cir. 1979); *see also EEOC v. University of Pennsylvania*, 850 F.2d 969,
20   971 (3d Cir.), *cert. granted in part*, 488 U.S. 992 (1988), *order amended*, 490 U.S.
21   1015 (1989), *aff'd on other grounds*, 493 U.S. 182 (1990).

22           The first-to-file rule may be invoked "when a complaint involving the same
23   parties and issues has already been filed in another district."  *Pacesetter Systems,*
24   *Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).  Further, it is well settled
25   that "[i]n all cases of federal concurrent jurisdiction, the court which first had
26   possession of the subject must decide it."  *Crosley Corp. v. Hazeltine Corp.*, 122
27   F.2d 925, 929 (3d Cir. 1941), quoting *Smith v. M'Iver*, 22 U.S. 532 (1824)
28   (emphasis added); *see also Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950

1   (5th Cir. 1997); *Lockheed Martin Corp. v. L-3 Comm. Corp.*, 370 F. Supp. 2d 1349,

2   1350-51 (N.D. Ga. 2005) ("when parties have filed competing or parallel litigation

3   in separate federal courts, the court in which the case was first filed should hear the

4   case"); Schering Corp. v. Amgen Inc., 969 F. Supp 258, 267 (D. Del. 1997)[9] ("The

5   first-filed rule turns on which court first obtains possession of the subject of the

6   dispute, not the parties of the dispute").

7       This same rule applies in patent cases.  *Genentech v. Eli Lilly & Co.*, 998 F.2d

8   931, 937-38 (Fed. Cir. 1993) (applying the "general rule [that] favors the forum of

9   the first-filed action" to a patent case).

10      In applying the first-to-file rule, a court typically looks at three factors: (1) the

11  chronology of the two actions, (2) the similarity of the parties, and (3) the similarity

12  of the issues.  *Z-Line Designs, Inc. v. Bell*, LLC, 218 F.R.D. 663, 665 (N.D. Cal.

13  2003).  The courts in the Ninth Circuit do not require strict identity of the parties or

14  issues.    Only substantial similarity is required.    *See, e.g., L. Cohen Group v.*

15  *Luxurychair.com*, No. C 05-4476, 2006 U.S. Dist. LEXIS 2301, at *5 (N.D. Cal.

16  Jan. 18, 2006) ("the parties and issues need not be identical for the first-to-file rule

17  to apply") (citing Save Power, 121 F.3d at 950-51).[10]   Liberal construction of the

18  first-to-file criteria is designed to best serve policies against inefficiency and

19  unnecessary duplication that underpin the first-to-file rule.  *Arris Int'l, Inc. v. Hybrid*

20  *Patents, Inc. (In re Com21, Inc.)*, 357 B.R. 802, 807 (Bankr. N.D. Cal. 2006).

21

22

23  [9]   Quoting Advanta Corp. v. Visa U.S.A., Inc., No. 96-7940, 1997 U.S. Dist.
    LEXIS 2007, at *6-7 (E.D. Pa. Feb. 19, 1997).

24  [10]   *See also Com21, Inc. v. Hybrid Patents, Inc.*, 357 B.R. 802, 807 (Bankr. N.D.

25  Cal. 2006) ("the courts in this circuit have generally not required strict identity of
    the issues or parties"); *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093,

26  1097 (N.D. Cal. 2006) ("The 'sameness' requirement does not mandate that the two
    actions be identical, but is satisfied if they are 'substantially similar'"); *British*

27  *Telecomm. plc v. McDonnell Douglas Corp.*, No. C-93-0677, 1993 U.S. Dist.
    LEXIS 6345, at *4 (N.D. Cal. May 3, 1993) (the absence of strict identity of parties

28  "does not mandate this court to disregard the first-to-file rule, rather it is another of
    the factors this court must consider in exercising its discretion").

Rutan & Tucker, LLP
*attorneys at law*

Poignantly, the Federal Circuit has stated in a case involving EFI (Plaintiff here) that factors to be considered by a district court in deciding whether to dismiss a declaratory judgment action include "the convenience and availability of witnesses, or absence of jurisdiction over all necessary and desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party of interest." *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) (emphasis added).

There are exceptions to the first-to-file rule. These include when the plaintiff in the first-filed action has: (1) filed an anticipatory suit, (2) acted in bad faith, or (3) engaged in forum shopping. *Alltrade Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). "A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications that a suit by defendant was imminent." *Z-Line Designs, Inc.*, 218 F.R.D. at 665. No exception is applicable here. In addition, the determination of whether an exception to the first-to-file is applicable is to be made by the court in which the action was first filed. See *Alltrade*, 946 F.2d at 628 ("As for the respective convenience of the two courts, normally [this argument] should be addressed to the court in the first-filed action") (brackets in original) (internal quotations omitted); *see also Pacesetter*, 678 F.2d at 96 (noting that normally the respective convenience of the two courts should be addressed to the court in the first-filed action).

### 1.   The Texas action was filed before the present suit.

The facts regarding the timing of the various actions are indisputable. On August 8, 2007, Defendant Screentone filed the Texas Action alleging patent infringement.[11] On November 13, 2007 — more than three months **after** the Texas Action was instituted — EFI filed the present suit. There can be no dispute that the Texas Action is, chronologically, the first-filed action. Therefore, this factor weighs in favor of transferring this action under the first-to-file rule.

---

[11]   Nelson Decl., Ex. 3.

Rutan & Tucker, LLP
attorneys at law

## 2.   The parties in this action are substantially similar to the parties involved in the pending Texas action.

As established above, there is no requirement that the parties in the first and second filed actions be identical.  Substantial similarity is the only requirement.  While EFI is not named in the Texas Action, EFI's specific relationship to at least three of the Texas Defendants prompted the filing of this lawsuit.

By letter dated October 16, 2007 (two months after Screentone filed the Texas Action), EFI wrote, "It has come to [EFI's] attention that Acacia's subsidiary, Screentone, filed a patent infringement suit in Marshall, Texas, naming some of our OEM customers as defendants."[12]   EFI identified those "defendants" in its Complaint as Canon, Ricoh, and Konica Minolta.[13]

EFI's letter further demanded that Screentone "immediately withdraw any claims against [EFI's] customers based on EFI's products…"[14]   The letter clearly demonstrates that this suit was precipitated by the Texas Action and EFI's relationship with its Texas Defendant customers.  Any argument from EFI that the single licensing communication it received from Acacia Technologies nearly twenty months prior to the institution of this lawsuit somehow substantiates the suit's filing would be disingenuous.

EFI is a company that specializes in network printing solutions, particularly print controllers.[15]   It sells its products to companies such as Canon, Ricoh, and Konica Minolta, who in turn incorporate EFI's technology into their own print servers, printers, and copiers.[16]   Since EFI customers implement EFI technology, it is likely that those customers require EFI to indemnify them for legal claims concerning that technology — including claims for infringement.

---

[12]   Nelson Decl., Ex. 4.
[13]   See EFI Complaint at 12 and 16.
[14]   Nelson Decl., Ex. 4.
[15]   Nelson Decl., Ex. 8.
[16]   Id.

As indemnitor, EFI is an extension of its OEM customers that happen to be defendants to the Texas Action.   Rather than file this redundant declaratory judgment action, EFI should have intervened in the Texas Action and sought its declaratory judgments there.   Because of its supposed indemnity obligations and because EFI provides key technology to three of the seven Texas Defendants, there exists the requisite substantial similarity such that this action merits transfer.

**3.     The issues in this action are nearly identical to the issues involved in the pending Texas action.**

The issues involved in this and the Texas Action are effectively identical. Both actions involve the infringement and the validity of the '809 patent.   In order to adjudicate Screentone's infringement claims in the Texas Action, extensive discovery of EFI and its technology must be conducted.   There will be significant development of the parties' validity positions, and the Texas Court will be required to conduct claim construction proceedings pivotal in any infringement and validity analysis.   These same efforts would be duplicated here, perhaps with inconsistent results, if the present action is permitted to move forward.   Such is an inefficient and wasteful use of judicial resources.

EFI will argue that it included the parent '301 patent in this suit and that the '301 patent is not part of the Texas Action.   This is a red herring — a strategic ploy designed to establish a basis for avoiding transfer.   This supposition is bolstered by reference to EFI's letter of October 16, 2007, which addresses only the '809 patent.[17]   Indeed, the only mention of the '301 patent anywhere is the passing reference to it in the aforementioned initial licensing letter from Acacia Technologies to EFI in March 2006.   And there is no reason that EFI could not seek the same declaratory judgments concerning the '301 patent in the Texas Action, if so desired.

The '809 patent being paramount in significance, it is clear that the issues

---

[17]   See Nelson Decl., Ex. 4.

1  involved in this and the Texas Action are substantially similar, and this factor

2  weighs heavily in favor of transfer.

3    **4.    A Factually Relevant, Persuasive Case Favors Transfer to**

4         **Texas.**

5        *Ciba-Geigy Corp. v. Minnesota Mining & Mfg. Co.*, 439 F. Supp. 625 (D. R.I.

6  1977) merits discussion for its notably comparable circumstances and the court's

7  rationale for ordering transfer to the first-filed court. *Ciba-Geigy* involved a first-

8  filed patent infringement suit brought by 3M in the Northern District of Illinois

9  against a company called "Ansul." *Id.* at 626. Three months later, Ciba-Geigy

10 (Ansul's indemnitor) and Ansul filed a declaratory judgment action against 3M in

11 the District of Rhode Island. *Id.* The *Ciba-Geigy* court reasoned that "it would be

12 wasteful of judicial resources to permit two suits to continue <u>and to encourage Ciba</u>

13 <u>to litigate only the Ansul … issue in the Illinois forum by the promise of a</u>

14 <u>subsequent suit here.</u>" *Id.* at 631 (emphasis added). Thus, the *Ciba-Geigy* court

15 transferred the case to the first-filed court in Illinois. The same action is warranted

16 here for the same reason. EFI should not be encouraged to litigate only its exposure

17 via the infringements of Canon, Ricoh, and Konica Minolta in the Texas Action by

18 the promise of a subsequent suit concerning any additional exposure EFI may have

19 in this forum.

20   **B.    This Action Should Be Transferred Under 28 U.S.C. 1404(a) to**

21        **Prevent Unnecessary Duplication of Efforts and Resources.**

22        A district court may transfer a case pending before it "to any other district or

23 division where it might have been brought." 28 U.S.C. § 1404(a). Under § 1404(a),

24 the district court has discretion to "adjudicate motions for transfer according to an

25 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v.*

26 *GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000) (quoting *Stewart*

27 *Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted)).

28        To support a motion for transfer the movant must show: (1) that venue is

1  proper in the transferor district; (2) that the transferee district is one where the action

2  might have been brought; and (3) that the transfer will serve the convenience of the

3  parties and witnesses and will promote the interest of justice.  *See Broadcast Data*

4  *Retrieval Corp. v. Sirius Sat. Radio, Inc.*, No. CV 06-1190, 2006 U.S. Dist. LEXIS

5  37641, at *5 (C.D. Cal. June 6, 2006).  Once the two, threshold venue elements are

6  met, "the Court turns to 'the central inquiry of a § 1404(a) motion' — the

7  convenience of the parties and witnesses and the interests of justice."  *Id.* at *5-6.

8  Specifically:

9  > In determining the convenience of the parties and
> witnesses and the interests of justice, the Court may
10 > consider multiple factors, including, inter alia: (1) the
> plaintiffs' choice of forum; (2) the respective parties
11 > contacts with the forum; (3) the contacts relating to the
> plaintiffs' claims for relief in the chosen forum; (4) the
12 > ease of access to sources of proof; (5) familiarity of each
> forum with applicable law; and (6) the availability of
13 > compulsory process to compel attendance of unwilling
> non-party witnesses.

14

15  *Id.* at *6.

16  **1.    Threshold venue elements for § 1404(a) transfer are met.**

17      Venue for the current action appears to be proper in this district.  Defendants

18  each maintain a place of business here.

19      And this action could have been brought in the Eastern District of Texas, the

20  transferee district.  "Any civil action for patent infringement may be brought in the

21  judicial district where the defendant resides, or where the defendant has committed

22  acts of infringement and has a regular and established place of business."  28 U.S.C.

23  § 1400.

24      EFI touts itself as "the world leader in digital imaging and print management

25  solutions for commercial and enterprise printing."  And "EFI products are sold to

26  and installed in leading corporations, advertising agencies, graphic design studios

27  and print-for-pay and commercial print businesses around the world."[18]  Since EFI's

28  ---

[18]   See Nelson Decl., Ex. 8.

1  products are sold in the Eastern District of Texas — at a minimum as a critical

2  component of printing products sold by EFI's OEM customers — any infringement

3  of the '809 patent would also occur in that district making it an appropriate forum to

4  have brought this action.   And EFI has previously availed itself of the Eastern

5  District of Texas in filing its own patent infringement actions.[19]

6            **2.      Plaintiff's choice of forum is to be afforded less deference**

7                     **based on the facts surrounding the filing of EFI's declaratory**

8                     **judgment action.**

9       While deference is normally given to a Plaintiff's choice of forum, *Decker*

10 *Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986), there are

11 exceptions.  For instance:

12            When two actions involving similar parties and issues are
             commenced in separate forums, a court may exercise its
13           discretion under § 1404(a) to transfer one of the actions.
             In so doing, <u>preference is given to the first-filed plaintiff's
14           choice of forum</u> under the 'first-to-file' rule."

15 *Guthy-Renker Fitness L.L.C. v. Icon Health & Fitness*, 179 F.R.D. 264, 269 (C.D.

16 Cal. 1998) (emphasis added) (citing *Alltrade* 946 F.2d at 625 (9th Cir. 1991)); *see*

17 *Nordson Corp. v. Speedline Techs.*, No. C-00-2769, 2000 U.S. Dist. LEXIS 15240,

18 at *4 (N.D. Cal. Oct. 6, 2000) (same).

19      In this case, the first-to-file rule acts to diminish any preference that might

20 normally be afforded EFI's chosen forum under a § 1404(a) analysis.  EFI brought

21 this suit three months <u>after</u> Screentone filed suit on the '809 patent in Texas, and

22 only after EFI was notified by its Texas Defendant customers that EFI may bear

23 liability for its customers respective infringements.

24

25

26 [19]  See Nelson Decl., Ex. 9 (*Massachusetts Institute of Technology v. Gateway*, No.
27 5:01-cv-00343 (E.D. Tex. Dec. 28, 2001) (complaint for patent infringement with
   EFI listed as plaintiff); Ex.10 (*Massachusetts Institute of Technology v. Abacus*
28 *Software, Inc.*, No. 5:01-cv-00344 (E.D. Tex. Dec. 28, 2001) (complaint for patent
   infringement).

Rutan & Tucker, LLP
*attorneys at law*

### 3. Convenience of the non-party witnesses favors transfer since it will avoid duplicative testimony.

Courts look to who the witnesses are, where they are located, what their testimony will be, and why such testimony is relevant. *A.J. Industries, Inc. v. United States Dist. Ct.*, 503 F.2d 384, 389 (9th Cir. 1974). There is likely to be a substantial overlap in witnesses for this and the Texas Action. Such witnesses include: 1) Paul Snypp, a Washington resident[20] and the inventor of the '809 and '301 patents; 2) the Seattle law firm that prosecuted the patent applications[21]; 3) multiple third party witnesses expected to testify concerning the relevant printing products of the Texas Defendants which incorporate EFI technology; and 4) various expert witnesses.

California courts have held that "the convenience of third-party witnesses [is] often the most significant factor" when considering the convenience of the parties. *Coxcom, Inc. v. Hybrid Patents, Inc.*, No. C-06-7918, 2007 U.S. Dist. LEXIS 67168, at *5 (N.D. Cal. Aug. 30, 2007). In *Coxcom*, the court granted transfer to the Eastern District of Texas noting that with respect to third party witnesses "transfer would be substantially more convenient for each such witness, even those who reside in California, because such witnesses would not be required to engage in duplicative litigation or travel to two different forums to attend court proceedings." *Id.*

Since it would be inconvenient and burdensome to require the non-party witnesses involved to travel to both Texas and California to provide duplicative testimony in actions that substantially overlap, this action should be transferred. And to the extent EFI would argue that it has corporate representatives in California making California a more convenient forum, the Ninth Circuit has held that "the location of the evidence and witnesses . . . is no longer weighed heavily given the

---

[20]  See Nelson Decl., Ex. 11.
[21]  See Nelson Decl., Ex. 12.

Rutan & Tucker, LLP
attorneys at law

1  modern advances in communication and transportation." *Panavision Int'l L.P. v.*
2  *Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).  This factor favors transfer to Texas.

3  **4.  Relevant evidence and proof is centrally located in Texas.**

4  Courts have noted that "the accessibility and location of sources of proof
5  should weigh only slightly in [a] Court's transfer analysis, particularly since these
6  factors have been given decreasing emphasis due to advances in copying technology
7  and information storage." *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757,
8  778 (E.D. Tex. 2000); *see Brock v. Baskin-Robbins USA Co.,* 113 F. Supp. 2d 1078,
9  1089 (E.D. Tex. 2000) ("when documents can be easily copied and shipped ... the
10  Court does not consider their present location 'an important factor in the transfer
11  analysis'").  Since most, if not all, of the relevant documents and evidence necessary
12  to adjudicate infringement and validity of the '809 patent will already be in Texas,
13  the factor weighs in favor of transfer.

14  **5.  The interests of justice will be served by consolidating this**
15  **action into the existing Texas Action.**

16  As noted above, the present action appears significantly similar to *Ciba-*
17  *Geigy*.  As with *Ciba-Geigy*, the interests of justice will be served by effectively
18  utilizing judicial resources and not permitting two actions, which are substantially
19  identical, from going forward on separate tracks.

20  California courts have recognized that the feasibility of consolidation is an
21  important consideration in transferring a case.  *Coxcom*, 2007 U.S. Dist. LEXIS
22  67168, at *5; *see also A. J. Industries*, 503 F.2d at 389 (holding "feasibility of
23  consolidation" with action in transferee court is "significant factor in a transfer
24  decision"; noting "even the pendency of an action in another district is important
25  because of the positive effects it might have in possible consolidation of discovery
26  and convenience to witnesses and parties").

27  Since transferring this case will permit consolidation with the Texas Action,
28  this factor weighs heavily in favor of transfer.

Rutan & Tucker, LLP
attorneys at law

### 6.    The parties' contacts with the forum.

The parties each have places of business in California.   However, EFI's "products are sold to and installed in leading corporations … and commercial print businesses around the world," which includes the Eastern District of Texas.  At least three of EFI's major customers are already involved in litigation in the Eastern District of Texas concerning their infringements of the '809 patent.  And EFI has, on at least two occasions, availed itself of the East Texas forum in pursuit of its own patent infringement lawsuits.[22]  As a consequence, this factor favors transfer.

### 7.    Familiarity with applicable law.

This case involves the application of federal patent law.  All federal district courts are equally capable of applying these laws.  Since there is no indication that California law, or any other law in which this Court has special familiarity, is at issue, this factor is neutral.

### 8.    Compulsory process.

There are many witnesses who reside outside of the subpoena power of this Court, including the inventor, Paul Snypp, a Washington resident,[23] and members of the law firm prosecuting the patents at issue.[24]  Mr. Snypp has already submitted an affidavit with the Texas court promising to appear if necessary to testify at trial.[25]  In addition, there are certain to be many non-party witnesses — namely representatives of EFI's OEM customers — who have not yet been identified and who likely reside outside of the subpoena power of this Court.  For instance, Canon's U.S. operations are based in New York, and Ricoh and Konica Minolta's are based in New Jersey.[26]  Because witnesses are (and/or are likely to be) dispersed throughout the United States, if not the world, this factor weighs in favor of transfer to a more centrally-

[22]  See Nelson Decl, Exs. 9 and 10.
[23]  See Nelson Decl., Ex. 11.
[24]  See Nelson Decl., Ex. 12.
[25]  See Nelson Decl., Ex. 13 at  3 (Declaration of Paul Snypp submitted in Texas Action).
[26]  See Nelson Decl., Ex 14.

Rutan & Tucker, LLP
attorneys at law

1   located forum like the Eastern District of Texas.

2   **VI.** **Conclusion**

3       Defendants respectfully ask that this Court transfer this action to the Eastern

4   District of Texas for consolidation with related, previously-filed litigation under the

5   first-to-file rule or for convenience under 28 U.S.C. § 1404(a). In the alternative,

6   this Court should stay this action pending resolution of various issues by the Eastern

7   District of Texas which could materially impact any action taken in this Court.

8

9   Dated: January 11, 2008          FRIEDMAN, SUDER & COOKE, P.C.

10                                      RUTAN & TUCKER, LLP

11  

12                                 By:       /s/ *Edward R. Nelson, III*

13                                      Edward R. Nelson, III
                                    Attorneys for ACACIA RESEARCH
                                    CORPORATION and SCREENTONE
                                    SYSTEMS CORPORATION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                                 **PROOF OF SERVICE BY MAIL**

2 **STATE OF CALIFORNIA, COUNTY OF ORANGE**

3       I am employed by the law office of Rutan & Tucker, LLP in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is

4 611 Anton Boulevard, Fourteenth Floor, Costa Mesa, California 92626-1931.

5       On January 11, 2008, I served on the interested parties in said action the within:

6 **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER CASE**

7 by placing a true copy thereof in sealed envelope(s) addressed as stated below:

8

9      Russell B. Hill
     Scott R. Maynard
     HOWREY, LLP

10      4 Park Plaza, Ste. 1700
     Irvine, CA 92614

11

12       In the course of my employment with Rutan & Tucker, LLP, I have, through first-hand personal observation, become readily familiar with Rutan & Tucker, LLP's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that

13 practice I deposited such envelope(s) in an out-box for collection by other personnel of Rutan & Tucker, LLP, and for ultimate posting and placement with the U.S. Postal Service on that same day

14 in the ordinary course of business. If the customary business practices of Rutan & Tucker, LLP with regard to collection and processing of correspondence and mailing were followed, and I am

15 confident that they were, such envelope(s) were posted and placed in the United States mail at Costa Mesa, California, that same date. I am aware that on motion of party served, service is

16 presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

17

18       I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

19       Executed on January 11, 2008, at Costa Mesa, California.

20

21 _____
     CYNDEE RUPERT                          (Signature)

22      (Type or print name)

23

24

25

26

27

28